**LINE MATERIAL CO. et al. v. OOMS, Commissioner of Patents.**

No. 8491.

United States Court of Appeals District of Columbia.

Argued Oct. 22, 1945.

Decided Dec. 17, 1945.

Mr. Charles F. Meroni, of Chicago, Ill., with whom Mr. William A. Smith, Jr., of Washington, D. C., was on the brief, for appellants. Mr. William J. Cerny, of Washington, D. C., also entered an appearance for appellants.

Mr. W. W. Cochran, Solicitor, United States Patent Office, of Washington, D. C., for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

In a previous consideration of this case we held that under Section 4915, R.S., 35 U.S.C.A. § 63, this court was without jurisdiction to review the case on its merits.[1] On certiorari, 65 S.Ct. 1182, the Supreme Court of the United States remanded the cause for further proceedings in accordance with its opinion in Hoover Co. v. Coe.[2]

Appellants' claims arose in this fashion: In May of 1934, Schultz, Line Material's assignor, applied for letters patent on his invention of an electrical fuse construction. Thereafter, in the course of prosecuting this application it became involved in interference proceedings. In 1937 the appellants offered an amendment to the original Schultz application which embraced the three claims now in dispute.[3] These claims were rejected by the Patent Office on the grounds that their subject matter was not disclosed in the appellants' original application. The District Court reached the same conclusion and dismissed the complaint.

There is no question of patentability of these claims raised in the case. The sole issue is whether or not the appellants, by reason of the original application and the actual operation of the device, are entitled to have the additional claims made a part of the initial application.

The claims in controversy center about the function and working relationship of two springs embodied in the fuse mechanism. The appellants seek to establish that the terms of the original application are such as to necessarily cover the operation they now desire to describe with more particularity through amendment. Specifically, appellants urge that the spring which provides the force for moving the fuse tube also, because of the inherent nature of the construction, contributes to the release of the latching device which normally holds the tube in its circuit completing position.

---

[1] Line Material Company v. Coe, 79 U. S.App.D.C. 176, 144 F.2d 518.

[2] 325 U.S. 79, 65 S.Ct. 955.

[3] In pertinent part the claims are: (46) "* * * means for translating the relative movement between said tube and terminal to produce a positive gap and extend said gap when the fuse link blows." (48) "* * * means for moving the fuse tube longitudinally relative to said one of said fuse terminals to release said locking means * * *." And (49) "* * * means for releasing said locking means by relative movement between the fuse tube and said one of the ferrules of said tube."

Appellants contend that the force transmitted to the latching device by a stud on the fuse tube is necessary to the unlatching as well as to making and extending the circuit breaking gap.

The court below found that the spring actuating the movement of the fuse tube did pershaps contribute in some degree in the final phase of the unlatching process, but that this contribution was slight to the point of being negligible. Moreover, the District Court, even after hearing the testimony of a witness highly skilled in the art and appearing in behalf of the plaintiffs, was not convinced that one skilled in the art would, from the drawings and specification, necessarily construct the device in such fashion as to make the action of the fuse tube spring an inseparable part of the unlatching movement.

■ The most cogent of appellants' points is that relating to the imperative nature of the fuse tube spring action against the latching arm. If, as appellants have endeavored to prove, the unlatching could not in fact take place without the force exerted by the fuse tube, it seems clear that the function claimed is inherent in the device. Concededly, if the function claimed be inherent in the device, as originally disclosed in the application, appellants are entitled to have the supplemental claims incorporated.[4]

At the trial of this case in the lower court the plaintiffs, appellants here, relied on the testimony of one skilled in the art, and on the demonstration in court of three models showing the construction and operation of three different species of the device. From our review of the record we are inclined to treat the three separate species of the mechanism on the same basis, though admittedly there are construction differences. It is perhaps more likely that the action claimed by appellants would take place in two of them than in the third. However, in our opinion, even giving the appellants the benefit of the construction most favorable to their position, they have failed to prove their case.

A careful examination of the entire record discloses these factors in negation of the appellants' contentions:

(1) By the original application there was set forth a description to the effect that the fuse tube and latching mechanism were separate.[5]

(2) The direction in which the force of the fuse tube spring is exerted renders it inoperative even to aid in the unlatching process until after the latch spring itself has released the locking arm from its normal position.

(3) The force of the fuse tube's downward thrust is not clearly and positively necessary to the release of the latch, that is, release may be consummated without the assistance of the pressure operative in the expulsion of the fuse tube.

In our view of the case we are not required to rule specifically on the effect of the plaintiffs' alleged previous contradiction of the function which he now seeks to have made a part of his application. Nevertheless, it may be said that in view of the Ellis and Prescott cases, supra, it is doubtful if the plaintiff in such an action should be denied the inherent concomitants of his invention even in the presence of a description that is inconsistent with the fact of operation. This would seem to be particularly true where, as here, the language used appears to be primarily directed toward describing a mechanical arrangement of parts rather than the functioning of the device.

■ An examination of the evidence offered at the trial seems to us to adequately support the result reached in the District Court. There is no question but that the spring actuating the latch arm must act first in effecting the release of the fuse tube. Otherwise the latch is useless in restraining the fuse tube from the circuit breaking position. This much being certain, the issue is narrowed to one of fact concerning the force, mode of transmission, and time and direction of application exerted by the fuse tube to aid in opening the latch. We think the lower court justified in finding that the force flowing from

---

[4] Ellis v. Shaw, 54 App.D.C. 185, 295 F. 1006; Prescott et al. v. Swain, 57 App. D.C. 306, 22 F.2d 1004. It may also be observed that the applicant is not obliged to fully understand the operation of his device in order to be protected as to its functioning. Marconi Wireless Tel. Co.

v. De Forest Radio Telephone & Telegraph Co., 2 Cir., 243 F. 560.

[5] Claim 13 of the original specification read in part: " * * * the releasing motion of said latching means being independent of said first mentioned spring * * *."

the movement of the fuse tube was not necessary to the opening of the latch, that is to say, any force directed from the tube to the latch was gratuitous, not imperative to the unlatching.

At best we believe no more was shown than that the fuse tube in biasing downward possibly contributes to the releasing action. This possibility is not sufficient to support the appellants' contention.[6] Likewise, it does not follow from the mere fact that the two springs operate at the same time, but for different primary purposes, that their joint action is required to effect the release.

We consider the lower court's conclusions in this case to have been fairly drawn from the evidence adduced at the trial.

Affirmed.

[6] Forward Process Co. v. Coe, 73 App. D.C. 100, 116 F.2d 946. Hansgirg v. Kemmer, 102 F.2d 212, 26 C.C.P.A., Patents, 937.